**Samuel M. GARRISON, Jr., P.E., Petitioner,**

v.

**OCK CONSTRUCTION LIMITED, and A.V. Flores, Respondents.**

Civ. No. 92–00053.

District Court of Guam, Territory of Guam.

Jan. 4, 1993.

## MEMORANDUM ORDER

FITZGERALD, District Judge.

This case came before the Court on September 30, 1992, for oral argument on Petitioner's Application for a Preliminary Injunction and for oral argument on Respondent's Motion to Dismiss. Following oral argument, the Court requested further briefing and allowed Petitioner to file a First Amended Complaint. The Complaint and the Briefs now on file, the Court rules as follows:

After the filing of the First Amended Complaint, the issue now before the Court is whether this Court has jurisdiction. Petitioner alleges that Respondent fraudulently denied him employment in order to ensure certification of an alien worker for the same job. Respondent claims that this is a mere employment dispute, a breach of contract case, and, as such, belongs in Superior Court. Petitioner responds that this case involves labor certification under the U.S. Immigration and Naturalization laws, 8 U.S.C. § 1101 (defining an alien laborer in § 1101(a)(15)(H)(ii), thus the name "H–2") and the Court has jurisdiction on that basis.

This Court can have jurisdiction only if it is found that Petitioner has a private cause of action emanating from 8 U.S.C. § 1182, and therefore, standing to sue under *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). That case sets forth a four factor test to determine whether a federal statute creates a right of action in a private party, in this case, the Immigration and Naturalization Act, 8 U.S.C. § 1101 *et seq.* The issue whether the laws of temporary "H–2" workers allows an aggrieved domestic worker to sue is answered by examining, under *Cort v. Ash:*

1. whether the Plaintiff is a member of the class protected by the statute;

2. whether there is a legislative intent to create or deny a private remedy;

3. whether a private right of action is consistent with the primary congressional goal; and

4. whether the controversy is one traditionally relegated to state law.

Before launching into this analysis, however, it must be noted that the several cases that have used *Cort v. Ash* to determine whether aggrieved domestic workers have a private cause of action under the Immigration and Naturalization Act (the "INA") have reached divergent results.

The briefs of the parties well illustrate this. Petitioner Garrison relies primarily on *International Union of Bricklayers v. Meese,* 761 F.2d 798 (D.C.Cir.1985) and two earlier cases, *Galindo v. Del Monte Corporation,* 382 F.Supp. 464 (N.D.Ill.1974), and *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). All of these cases found private injuries on behalf of domestic workers in situations where aliens had been hired.

Respondent OCK, on the other hand, relies on two clear pronouncements against such a private right of action found in *Flores v. Braun Packing Co., etc.,* 482 F.2d 279 (5th Cir.1973) and *Chavez v. Freshpict Foods, Inc.,* 456 F.2d 890 (10th Cir.1972), *cert. den.* 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492 (1972). In both cases, the domestic workers complained of the hiring of illegal aliens and alleged a right under 8 U.S.C. § 1324, the penalty provision of the INA. The Courts in both cases expressly refused to allow a disgruntled domestic worker to sue a potential or former employer for preferring aliens over

domestic workers. Respondents' position is well substantiated by *Flores, Chavez,* and their progeny.

Each party justifiably relies on a seemingly irreconcilable set of cases.[1] The fact that these cases are at odds on this issue renders the *Cort v. Ash* analysis less dispositive. A closer examination of these cases is necessary.

Clearly, *Flores* and *Chavez* spoke for their decade on the issue, maintaining that the penal sections of the INA provided no private right of action against companies employing illegals. Cases which acknowledged this rule include *Comtronics v. Puerto Rico Telephone Co.,* 409 F.Supp. 800 (P.R.1975), aff'd 553 F.2d 701 (1st Cir.1977), and *Rogers v. Frito–Lay, Inc.,* 611 F.2d 1074 (5th Cir. 1980), *cert. den.,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). The case of *Dowling v. U.S.,* 476 F.Supp. 1018 (D.Mass.1979) relied on *Flores* and *Chavez* to deny a private right of action under the definitional section of the INA, 8 U.S.C. § 1101. The case of *Collyard v. Washington Capitals,* 477 F.Supp. 1247 (D.Minn.1979) relied on *Flores* and *Chavez* to reiterate that the penalty section of the INA, 8 U.S.C. § 1324, created no private right of action on behalf of aggrieved U.S. workers.

At the same time, a Court in *Galindo v. Del Monte Corporation,* 382 F.Supp. 464 (N.D.Ill.1974), followed a line of cases in which "on more than one occasion federal courts [have] stated that a civil remedy may be implied from statutes on regulations which make no mention of a right to bring suit." *Galindo* at 468. That Court went on to note that "when it can be fairly stated that Congress intended to benefit a particular class in its statutory scheme, a civil remedy will be implied for such beneficiaries." The *Galindo* court acknowledged *Flores'* and *Chavez'* holding against a private remedy under the INA, but entitled the Plaintiff to maintain an action under the Wagner–Peyser Act, a federal labor law, 29 U.S.C. § 49.

Later, a Court in *International Union of Bricklayers v. Meese,* 761 F.2d 798 (D.C.Cir. 1985), ruled that because domestic workers are protected by the INA, they had standing to challenge the Immigration and Naturalization Service's guidelines for H–2 hirings which resulted in lost job opportunities for the U.S. workers. That Court's analysis of standing focused on whether the plaintiffs fell within the "zone of interest" surrounding 8 U.S.C. § 1101 and § 1201. It was found that indeed U.S. workers were within that zone of interest because the statute evidenced strong congressional concern to protect the American worker.

Several cases since *International Union of Bricklayers* have acknowledged the legal possibility a private action emanating from the INA in favor of U.S. workers; these include *Comite De Apoyo Para Los Trabajadores Agricolas (CATA) v. Dole,* 731 F.Supp. 541 (D.C.1990), and *Federation for American Immigration Reform (FAIR) v. Meese,* 643 F.Supp. 983 (S.D.Fla.1986), but in neither of these cases did the court find sufficient injury to support the standing referred to in *International Union of Bricklayers.* Such standing was also acknowledged in *United Transportation Union v. Interstate Commerce Commission,* 891 F.2d 908 (D.C.Cir. 1989), *cert. den.,* 497 U.S. 1024, 110 S.Ct. 3271, 111 L.Ed.2d 781 (1990), but again not found under the facts of that case.

The Ninth Circuit's position on this issue began with *Lopez v. Arrowhead Ranches,* 523 F.2d 924 (9th Cir.1975), where, using the *Cort v. Ash* analysis, the Ninth Circuit held that because § 1324 of the INA was a penal provision, it created no private right of action. It must be noted that *Lopez,* like *Flores* and *Chavez,* dealt with the hiring of illegal aliens rather than the certification of legal H–2 aliens, as is the case here and in *International Union of Bricklayers.* Accord *Fagundez v. Oakland Raiders,* 498 F.2d 1394 (Em.App.1974).

It is enough to say that the authorities are divided on the question of inferring private rights of action [under the INA], although not irreconcilably.

---

1. This lack of consensus has been recognized in *Farmland Industries, Inc. v. Kansas–Nebraska Natural Gas Co.,* 349 F.Supp. 670 (D.Neb.1972), aff'd 486 F.2d 315 (8th Cir.1973), in which the Court stated,

A later case of *Nieto–Santos v. Fletcher Farms,* 743 F.2d 638 (9th Cir.1984) addressed the issue whether aliens, rather than domestics, had a private cause of action under the INA. That Court suggested that a distinction should be made between *Lopez* and the case at hand because at issue was legal rather than illegal aliens. However, the Court held that because aliens were obviously not meant to be protected under the statute, *Cort v. Ash* compelled the conclusion that aliens had no standing to challenge INS regulations. The *Nieto–Santos* case held, at 642, that the "regulations' . . . stated purpose is to protect the jobs of U.S. citizens." This case clearly suggests that *Cort v. Ash* could support a finding of standing where domestic workers sought civil remedies under the INA.

The recent Ninth Circuit case of *International Longshoremen's and Warehousemen's Union v. Meese,* 891 F.2d 1374 (9th Cir.1989) found that an American labor union had standing to challenge the INS because of administrative proceedings allowing aliens to get U.S. jobs. The Court expressly relied on *International Union of Bricklayers* to find that American laborers had the right and the standing to challenge the process whereby H–2 workers were certified for a particular job category.

Thus, while none of the cases cited found standing on the part of U.S. workers against an employer for the hiring of aliens, the Ninth Circuit, among others, has allowed domestic workers to challenge the process by which an H–2 labor certification is granted. Each party's attempt at distinguishing the opponent's cases is disingenuous; both parties cited accurate authority. However, the weight of controlling authority favors a finding of standing.

This conclusion is buttressed by the unique situation of Guam's immigration laws. In all other parts of the U.S., the Secretary of Labor makes the determination whether an H–2 laborer will be certified, based on such factors as the availability of U.S. workers for the same job. In 1983, the Immigration and Naturalization Service proposed a new regulation, at 48 F.R. 21593, giving the authority over H–2 labor certifications on Guam to the Governor of Guam. The reasoning was that Guam's location and economic circumstances created unique labor conditions more easily determined by local authorities. *See* 48 F.R. 21593.

This regulation was adopted in April 1984 to take effect in July 1984. 49 F.R. 15182. It removes Guam's H–2 visa applicants from the regular procedure performed by the Secretary of Labor under 8 C.F.R. § 214.2(h)(3) and creates new regulations under which the labor certification is processed by the Governor or his ' delegee. 8 C.F.R. § 214.2(h)(5)(iii). Under this regulation, it is the Governor or the head of the Guam Department of Labor who determines the availability of U.S. workers for the same job.

Unique to the Guam H–2 labor certification process is the regulation entitled, "Invalidation of Temporary Labor Certification Issued by the Governor of Guam." It provides as follows:

> A temporary labor certification issued by the Governor of Guam may be invalidated by a director if it is determined by the director *or a court of law* that the certification request involved fraud or willful misrepresentation.

8 C.F.R. § 214.2(h)(5)(v)(H)(1). This regulation clearly contemplates that a court on Guam has the authority to adjudicate whether a labor certification was procured fraudulently, such as is claimed by the Petitioner.

The District Court of Guam has original jurisdiction over all cases arising under the Immigration laws. 8 U.S.C. § 1329. However, since the adoption of the Guam Labor regulation in 49 F.R. 15182, this Court has not been asked to review a labor certification. Such review is clearly contemplated by the regulatory scheme adopted set forth in § 214.2(h), however.

Given that this Court is empowered to determine whether there was fraud, and given that current authority allows Petitioner standing to challenge the H–2 certification of his competitor, the Motion to Dismiss on the grounds that Petitioner does not have standing is not well taken. Two impediments to denying the Motion remain, however.

First, Petitioner has in fact not challenged the H–2 labor certification of his alien com-

petitor. Indeed, a second problem is that Petitioner has not yet even alleged that his replacement has been hired by OCK.

Until there is an H–2 labor certification, it cannot be challenged. It is unlikely from the present status of the case law that Petitioner can sue his potential employer directly. Before this Court assumes jurisdiction, this case must be in a posture contemplated by the *International Longshoremen's and Warehousemen's Union* case, as well as by Regulation § 214.2(h)(5)(v)(H)(1), where the aggrieved U.S. worker challenges the labor certification of his replacement. Until this case is in that posture, this case is a mere employment dispute, more suitable for disposition by the Superior Court of Guam.

For the foregoing reasons, the Motion to Dismiss is CONDITIONALLY GRANTED, but the Court grants Petitioner leave to amend his Complaint within fourteen days of this date to include the allegation that an H–2 labor certification has been completed for his alien competitor or replacement. If no replacement for Petitioner has been hired, and therefore no certification can be challenged, the Petitioner will be unable to amend his Complaint and it will therefore be DISMISSED, fourteen days from the date of this Order, *sua sponte*, without prejudice to refile the Complaint if an H–2 labor certification is completed at a later date.

SO ORDERED.