**Mercedes MARTINEZ, et al., Plaintiffs,**

v.

**Robert REICH, et al., Defendants.**

**Civil Action No. L–92–147.**

United States District Court,
S.D. Texas,
Laredo Division.

Feb. 8, 1996.

Javier Riojas, Texas Rural Legal Aid, Eagle Pass, TX, for plaintiffs.

Howard E. Rose, U.S. Attorneys Office, Houston, TX, for defendants Lynn M. Martin, Floyd E. Edwards, Department of Labor, William Barr, Attorney General and Immigration and Naturalization Service.

234

Howard E. Rose, U.S. Attorneys Office, Houston, TX, Robert Gaines Griffin, Davidson & Troilo, San Antonio, TX, for defendant Frank Stanley Forestry.

### MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending before the Court is Plaintiffs' motion for summary judgment on their claims brought under the Administrative Procedures Act for the Department of Labor's alleged violations of the Immigration and Nationality Act (INA) and the Wagner–Peysner Act. Federal Defendants [1] have filed a cross-motion for summary judgment. On March 14, 1995, the Plaintiffs notified the Court that a settlement had been reached as to Defendant Frank Stanley d/b/a Frank Stanley Forestry, Inc. and F & K Enterprise, Inc. ("Stanley") (Docket n. 51). Plaintiffs' motion to dismiss Stanley (Docket n. 52) was granted with prejudice on April 4, 1995 (Docket n. 53). Stanley's motion to set aside entry of default (Docket n. 46) is therefore DENIED as moot. On September 6, 1995, the Court ordered the Plaintiffs and Federal Defendants to supply a status report and specifically to address two issues: (1) the impact of the Department of Labor's new procedures for processing temporary alien labor certification applications as found in General Administration Letter ("GAL") No. 1–95; and (2) the possibility that this case is now moot. (Docket n. 54). Both parties complied with the Court's order. (Dockets nn. 55, 56).

### Background

Plaintiffs are United States residents who are migrant workers (domestic workers). They allege that the Department of Labor (DOL) has in the past and continues to unlawfully approve employers' alien labor certification applications. They seek declaratory and injunctive relief. Originally the suit particularly complained about job offers by Stanley for tree planters during the period of December 7, 1992 through March 7, 1993.

After this case was filed, and pursuant to an agreed order, (Docket n. 7), Stanley offered employment to each of the Plaintiffs for that time period, although apparently no named Plaintiffs actually accepted the employment offer nor does it appear that they applied for work with Stanley the following year. Plaintiffs subsequently allege that DOL processed applications from Stanley for jobs covering the period of December 1993 through March 1994.

### Statutory and Regulatory Scheme

Under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H), the Attorney General oversees the admission of temporary foreign workers. Before visas for these workers can be issued by the Attorney General, the Secretary of Labor must certify that there are no domestic workers ready, willing, and able to perform the work and that there are no potentially adverse effects on domestic workers that would result from hiring temporary foreign labor. 8 C.F.R. § 214.2(h)(6)(iv)(A)(1) (1995). The Wagner–Peysner Act, 29 U.S.C. § 49, authorizes the Department of Labor (DOL) to establish the Federal Employment Service to form a national system of public employment offices to further this end.

The DOL regulations provide standards for terms and conditions and domestic recruitment of jobs subject to alien labor certification applications. See generally 20 C.F.R. § 655.0–655.1060 (1995). Three subparts of Part 655 are relevant to this case: Subpart A—Labor Certification Process for Temporary Employment in Occupations Other Than Agriculture, Logging, or Registered Nursing (H–2B Workers); Subpart B—Labor Certification Process for Temporary Agricultural Employment (H–2A Workers); and Subpart C—Labor Certification Process for Logging Employment and Non–H–2A Agricultural Employment. The definition of "agricultural" labor under Part 655, and also under 8 U.S.C. § 1101(a)(15)(H)(ii)(a), is based on the Internal Revenue Code, 26

**1.** "Federal Defendants" include Robert Reich as Secretary of Labor; Floyd Edwards as Regional Administrator, Region VI of the Employment and Training Administration of the U.S. Department of Labor; the U.S. Department of Labor, Janet Reno as Attorney General; and the Immigration and Naturalization Service.

U.S.C. § 3121(g) and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(f). Under the FLSA, agricultural jobs are those "performed by a farmer or on a farm." 29 U.S.C. § 203(f). The IRS definition is similar.

The pertinent language of Subpart A provides that in making its determinations, DOL shall follow "[t]he policies of the United States Employment Service set forth in part 652 of this chapter and subparts B and C of this part." 20 C.F.R. § 655.3(b) (1995). Part 652 provides for the establishment and functioning of State Employment Services (SES) for the "basic purpose" of improving "the functioning of the nation's labor markets by bringing together individuals who are seeking employment and employers who are seeking workers." 20 C.F.R. § 652.2. Subparts B and C of § 655 delineate the specific minimum requirements for temporary "agricultural" and logging jobs, and their advertisement and recruitment.

In 1984, DOL issued General Administration Letter (GAL) No. 10–84, which established procedures for processing temporary labor certification applications for non-agricultural jobs. 49 F.R. 25837 (1984). For non-agricultural workers, DOL followed and continues to follow the procedures in the GAL rather than those detailed in Subparts B and C of its regulations. Since the suit was filed, GAL 10–84 has been superseded by GAL No. 1–95. 60 F.R. 7216 (1995). Both parties agree, however, that the amendments incorporated in GAL 1–95 have no substantial impact on the issues currently before the court. (Docket n. 56 at page 3, Docket n. 55 at page 1). The provisions of GAL 10–84 which constitute the basis of Plaintiffs' claims remain unchanged.

### Plaintiffs' Arguments

Plaintiffs assert three basic arguments. First, they contend that a tree planter, even working outside a farm, is nevertheless performing an "agricultural job" which should be governed by the requirements of Subpart B. Alternatively, even if Subpart A applies, Plaintiffs contend that the language of § 655.3(b), adopting the "policies" of Subparts B and C, essentially requires adoption of the "procedures" specified in those subparts. Finally, even if Subpart A is limited to the "policies" of the other subparts, Plaintiffs say that the GAL fails to implement those policies.

### Mootness

Defendants first insist that this case is moot. They observe that Plaintiffs have settled with Stanley and that no Plaintiff applied to work for Stanley during either 1993 or 1994 even though other domestic workers did apply and were hired by Stanley. A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). An exception to the mootness doctrine is allowed where a claim is "capable of repetition yet evad[es] review," *i.e.*, the duration of the claim was too short to be fully litigated prior to expiration and there is a reasonable expectation that the same complainant will be subjected to the same action again. *Id.*

Because the procedure used to process Stanley's applications is still in effect, Plaintiffs' claim is capable of repetition. The complaint was filed in December of 1992. The 1992–1993 jobs originally complained of ended in March of 1993. Clearly, the duration of the claim was too short to be fully litigated prior to expiration. Plaintiffs have alleged they are migrant workers "who routinely report to the Texas Employment Commission for whatever day-work is available." Plfs.' First Am. Compl. at p. 6. Therefore, there is a "reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy*, 455 U.S. at 482, 102 S.Ct. at 1183.

It is clear that the H–2B procedures utilized by DOL have been in effect throughout the period of this litigation. Plaintiffs have an established history of performing seasonal agricultural work, including the forestry work offered by Stanley. Their grievance essentially is that because DOL does not utilize the much more detailed procedures found in Subparts B and C, they are continuing to be adversely effected. This is not only because the job notice and recruitment ef-

forts are not nearly as extensive but also because employers like Stanley under Subpart A are not required to meet standards involving items as housing, transportation, and workers' compensation insurance. For this reason, the argument continues, Plaintiffs cannot afford to migrate toward these jobs even if they learn about them. Therefore, they claim Stanley and other employers are allowed to obtain foreign workers when domestic workers like Plaintiffs would be willing and able to take the jobs if the conditions were better.

Plaintiffs fall within the zone of interest sought to be protected by the regulations in question. *International Union of Bricklayers v. Meese,* 761 F.2d 798, 802 (D.C.Cir. 1985). Like the plaintiffs in *Meese,* they allege that the DOL is causing INS to allow "aliens into the country to perform work which would otherwise likely go to" Plaintiffs. *Id.* They also charge that those alien workers "represent competition which [Plaintiffs] would not face if the [DOL] followed the procedures required by law." *Id.* They have "pointed to a systematic and administratively authorized pattern of governmental behavior which they allege to be illegal," causing them injuries in the past and which is reasonably likely to injure them in the future. *Id.* at 803. Furthermore, if the Court were to grant the relief sought by Plaintiffs, and force DOL to adopt procedures for non-agricultural workers more akin to those in Subparts B and C, the relief to Plaintiffs as domestic workers would be more than conjectural. *Id.* The Court concludes that this issue is not moot.

### Plaintiffs Are Not Agricultural Workers

■ Plaintiffs assert that tree-planting, even not on a farm, is an "agricultural" job. This argument is based on the Fifth Circuit holding that an "agricultural worker" under the Migrant and Seasonal Agricultural Workers Protection Act (AWPA), 29 U.S.C. §§ 1801–1872, includes tree-planter jobs identical to those at issue here. *Bracamontes v. Weyerhaeuser Co.,* 840 F.2d 271, 276 (5th Cir.), *cert. denied,* 488 U.S. 854, 109 S.Ct. 141, 102 L.Ed.2d 113 (1988). The *Bracamontes* court, however, specifically recog-

nized that neither the FLSA definition of agricultural employment nor that of the Internal Revenue Code "has been interpreted to include forestry work." *Id.* at 273. *Bracamontes* then noted that in 1974, Congress amended the Farm Labor Contractor Registration Act, the predecessor of AWPA, to add a "third definition" of agricultural employment and ultimately concluded that this third definition was broad enough to encompass tree planters. *Id.* at 274. Since Part 655 specifically relies on the Internal Revenue Code and the FLSA, not the AWPA, *Bracamontes* is not controlling. The Court concludes that tree planters are not agricultural workers under Part 655.

### "Policies" Equals "Procedures"?

■ Under Subpart A, § 655.3(a) states that the DOL shall certify temporary employment of aliens upon a finding "that qualified persons in the United States are not available and that the terms of employment will not adversely affect the wages and working conditions of workers in the United States similarly employed." Subsection (b) adds that in making that finding, DOL should consider the employer's attempts to recruit workers and the appropriateness of the wages and working conditions offered. Also, in making the appropriate findings, the "policies" of the United States Employment Service set forth in part 652 of Chapter V and Subparts B and C of part 655 should be followed. Plaintiffs say that because the language of (a) and (b) of § 655.3 already describe the appropriate policies, as does § 655.01, the particular reference in (b) to the "policies" of Subparts B and C necessarily means that the detailed procedures of those subparts are incorporated by reference. Defendants counter with the simple assertion that "policies" means what it says, does not mean "procedures," and that if DOL intended to mean "procedures," it could easily have said so.

There is an obvious superficial appeal to DOL's position. It is unnecessary to dwell on this particular issue, however, because it essentially collapses into Plaintiffs' alternative argument, which is that DOL cannot faithfully follow the "policies" of Subparts B

and C without following the procedures in those subparts.

*Is the GAL Arbitrary and Capricious?*

█ Plaintiffs argue that the procedures for certifying non-agricultural alien workers, reflected in GALs No. 10–84 and 1–95 are arbitrary and capricious and inconsistent with congressional intent. This argument concerns the undisputed differences between the procedures in the GAL and the procedures for agricultural workers reflected in Subparts B and C. For example, they complain that an employer such as Frank Stanley Forestry need not offer free housing, workers' compensation, cooking facilities, round trip transportation, and subsistence expenses from place of recruitment to place of employment. They also complain that the procedures for non-agricultural workers do not require use of the Employment Service System to circulate intrastate and interstate clearance orders.

█ The scope of judicial review of administrative agency action is narrow. The Court must initially presume that the agency action is valid. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The Court is not to substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 41–45, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983). An agency rule would be arbitrary and capricious if the agency relied on factors which Congress had not intended it to consider, had entirely failed to consider an important aspect of the problem, had offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Id.* The underlying congressional policy reflected in the INA is that foreign workers fill temporary jobs only if no qualified domestic workers are available and if employment of the foreign workers will not adversely affect wages or working conditions of similarly employed domestic workers. *See* 20 C.F.R. § 655.0(a)(1). The procedures in the GAL attempt to address those policies. The GAL requires that

the rate of pay not be below the prevailing wage for the occupation, that employers offer prevailing working conditions, and that terms and conditions offered to domestic workers be no less favorable than those offered to foreign workers. The employer may offer no terms and conditions contrary to federal, state or local law. The request for temporary workers must be filed with the local office of the "State job service." The application must then be placed in the regular Employment Service's system for ten days and advertised in the immediate area of the job in a newspaper of general circulation for three consecutive days.

While these GAL procedures attempt to implement the policies of the INA and the pertinent regulations, they undoubtedly are not nearly as comprehensive as those for agricultural workers. The differences, however, do not necessarily render the GAL arbitrary and capricious. Defendants observe that the GAL procedures cover a wide variety of occupations, many of which do not have the same characteristics as agricultural work. More importantly, Defendants point to the history behind these regulations. Prior to the enactment of the Immigration Reform and Control Act of 1986, Congress did not differentiate between temporary workers performing agricultural and non-agricultural services. All were referred to as H–2 workers. DOL, however, had issued separate procedures for agricultural workers because of its experience with employer abuse of migrant and seasonal agricultural workers. *See* 20 C.F.R. §§ 655.200–655.212 (1986).

The 1986 Act crystalized the distinction between agricultural and non-agricultural workers. 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and (b). Congress provided detailed guidelines for certifying foreign agricultural workers. 8 U.S.C. § 1188. The congressional history described "the unique needs of growers and the inadequacy of current protections for farm workers," but specifically noted that no changes were made to the statutory language concerning non-agricultural workers. The program was to be divided into two parts, the H–2A program for agricultural workers and the H–2B program for non-agricultural workers. *See* H.R.Rep. No. 99–682(I), 99th

Cong., 2d Sess. 51, 80, *reprinted in* 1986 U.S.C.C.A.N. 5654–55, 5684.

Faced with this legislative history, Plaintiffs counter that Congress was preoccupied with the fate of agricultural workers in 1986 because of documented abuses in that area. They insist that since 1986, there are now widespread abuses in hiring foreign non-agricultural workers and, therefore, the more comprehensive regulations for agricultural workers should be adopted for non-agricultural workers. The difficulty with this argument is that there is no record to support it. In oral argument, Plaintiffs' counsel made general reference only to widespread media reports. In 1986, Congress was apparently satisfied with the existing DOL procedures concerning temporary non-agricultural workers, militating against the argument that the 1984 GAL was contrary to congressional intent. There is nothing to indicate that the congressional intent has changed since then. There is likewise nothing to indicate that the GAL procedures are contrary to any evidence in an administrative record documenting any widespread abuses in the use of non-agricultural foreign workers.

The Court concludes that while the far-reaching procedures of Subparts B and C would clearly be more advantageous to the Plaintiffs, the DOL has not acted arbitrarily or capriciously in utilizing a different set of procedures for non-agricultural workers.

Plaintiffs' motion for summary judgment is DENIED; federal Defendants' motion for summary judgment is GRANTED.