**The UNITED STATES and Leonidas Mate, Plaintiffs,**

v.

**RICHARD DATTNER ARCHITECTS, Defendants.**

**No. 96 CIV. 9338(MBM).**

United States District Court, S.D. New York.

July 9, 1997.

Leonidas Mate, Bayonne, NJ, pro se.

Mark Seiden, Gogick & Seiden, New York City, for Defendant.

Mary Jo White, United States Attorney, Robert Sadowski, Assistant United States Attorney, New York City, for U.S.

## OPINION AND ORDER

MUKASEY, District Judge.

Leonidas Mate sues Richard Dattner Architect, P.C. for violations of the Immigration and Nationality Act, 8 U.S.C. § 1001 *et seq.* ("INA"), and the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"). The United States is a nominal plaintiff here because the FCA requires that the Government be given the opportunity to pursue any claims under that statute. *See* 31 U.S.C. § 3730 (1994). Defendant moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons outlined below, defendant's motion is granted.

### I.

In 1995, defendant, an architectural firm, employed Omolade Jacob Tukuru, a Nigerian citizen, as an architect. (Def. Mem. at 2)[1] Tukuru's temporary alien labor certification was to expire in the summer of 1995. (*Id.*) Department of Labor guidelines required that defendant search for qualified domestic workers before Tukuru's certification could be extended. (*Id.*) Therefore, on July 2, 1995, defendant advertised in *The New York Times* for an architect. (Pl. Affirm. at ¶ 3(a)) Plaintiff responded to the advertisement and, on August 23, 1995, defendant interviewed him. (*Id.* ¶ 3(b))

Plaintiff claims that defendant did not hire him despite his qualification for the job. Instead, plaintiff claims, defendant submitted a false application for a temporary labor certification to the Secretary of Labor representing that after conducting a search, no qualified domestic workers were available for Tukuru's position. (Compl. at 2; Pl. Affirm. ¶ 3(b), (g)) The Secretary then granted defendant's labor certification application. (Def. Mem. at 3)

Plaintiff asserts two claims. First, he alleges an "action in tort for refusing to hire a fully qualified U.S. worker in favour of a foreign worker, using a fraudulently obtained certification 'that qualified persons in the U.S. are not available,' in violation of a clearly mandated public policy (20 C.F.R. s 655.0), which is important and involves a singularly public purpose." (Compl. at 2) Second, plaintiff asserts that defendant violated the FCA by knowingly presenting a "false claim for approval." (Compl. at 2–3) The Government declined to intervene in this action under the FCA, and, as he was permitted to do, plaintiff proceeded in the name of the United States. *See* 31 U.S.C. § 3730(b) (1994). Defendant moves to dismiss both claims pursuant to Fed.R.Civ.P. 12(c).

### II.

When evaluating a motion for judgment on the pleadings, a court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party. *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 55 (2d Cir.1985). A court must also take "the well-pleaded facts alleged in the complaint … as admitted," *Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 286 (2d Cir.1974), and may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Judgment on the pleadings may be granted only if, on the facts admitted, the moving party is clearly entitled to judgment. *Maggette v. Dalsheim,* 709 F.2d 800 (2d Cir.1983).

---

1. Although a Rule 12(c) motion is a facial attack on the pleadings, plaintiff, proceeding *pro se,* has provided a somewhat sketchy complaint. Accordingly, some of the background facts are drawn from defendant's motion papers. Plaintiff has failed to provide or dispute these facts, and in any event, they do not affect the disposition of this motion.

The basis of plaintiff's first claim is not entirely clear. Plaintiff cites 20 C.F.R. § 655.0, a regulation enacted pursuant to the INA, which concerns the procedure for obtaining approval for the temporary employment of aliens. Thus, the most likely interpretation of plaintiff's claim is that defendant violated the INA and its regulations by submitting a fraudulent statement to the Secretary of Labor and hiring an alien when domestic workers were available. Defendant argues that plaintiff's INA claim must be dismissed because no private right of action exists against an employer for submission of a false temporary labor certification application and for hiring an alien pursuant to a false certification. A review of the statutory and regulatory structure is essential to deciding whether plaintiff has a valid claim.

## A. The Statutory and Regulatory Structure

■■■ The INA creates two broad classifications for persons seeking to enter the United States: immigrant and nonimmigrant. A person is presumed to be an immigrant unless proved to fall within one of the classes of persons considered nonimmigrants. 8 U.S.C. § 1184(b) (1994). "Unlike the lawful immigrant ... who is admitted to the United States for permanent residence, the nonimmigrant may remain only for the duration of an authorized stay and engage only in those activities that are compatible with the specific nonimmigrant status given on entry." 1 Charles Gordon, Stanley Mailman & Stephen Yale–Loehr, *Immigration Law and Procedure* § 12.01, at 12–4 (1997). Those seeking nonimmigrant status must meet the requirements of a defined nonimmigrant class to obtain a nonimmigrant visa. 8 U.S.C. § 1201(a)(2) (1994).

■■■ Section 1101(a)(15) defines several classes of persons deemed nonimmigrants. Among them are temporary workers who perform services which domestic workers are unavailable to perform. The statute provides:

(15) The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens—

(H) an alien ... (ii)(b) having a residence in a foreign country which he has no intention of abandoning who is coming to temporarily to [*sic*] the United States to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country....

8 U.S.C. § 1101(a)(15)(H)(ii)(b) (1994).

■■■ In addition, the INA defines certain classes of persons who cannot be admitted to the United States, whether as immigrants or nonimmigrants, unless certain conditions are met. Those classes of persons include aliens who seek to enter the United States to perform any type of labor. The statute provides:

[T]he following describes classes of excludable aliens who are ineligible to receive visas and who shall be excluded from admission into the United States: (5)(A)(i) Any alien who seeks to enter the United States for the purpose of performing skilled or unskilled labor is inadmissible, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that—

(I) there are not sufficient workers who are able, willing, qualified ... and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and

(II) the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1182(a)(5)(A)(i) (1994). Thus, an alien seeking temporary admission to perform work may be admitted only when the Secretary of Labor certifies that domestic workers are unavailable to perform such work and that the alien's admission would not adversely affect domestic workers.

These two provisions together—the provision defining temporary workers who provide services for which domestic workers are unavailable as nonimmigrants and the provision stating that such workers are not automati-

742

cally excludable—provide the Attorney General with the authority to admit temporarily alien workers upon the Secretary of Labor's certification. *See* 8 U.S.C. § 1184(c) (1994).

The Secretary of Labor has promulgated regulations which establish the procedure for obtaining labor certifications. 20 C.F.R. § 655.0 *et seq.* Aliens admitted to the United States for temporary employment in occupations other than agriculture, logging, or registered nursing are classified as "H–2B Workers." *See* 20 C.F.R. § 655.0 (1996); 8 C.F.R. § 214.2(h)(1)(i) (1997). Any employer seeking H–2B status for an employee must "consider available United States workers for the temporary services or labor, and shall offer terms and conditions of employment which are consistent with the nature of the occupation, activity and industry in the United States." 8 C.F.R. § 214.2(h)(6)(iii)(B). In making her certification determination, the Secretary of Labor, or her designee, must consider the employer's attempts to recruit domestic workers. 20 C.F.R. § 655.3(b). The Secretary of Labor may approve the application for labor certification if she finds that qualified domestic workers are unavailable, and that the terms of the alien's employment will not adversely affect the wages and working conditions of domestic workers. 20 C.F.R. §§ 655.2–655.3.

After obtaining a labor certification,[2] the employer must file a petition for an H–2B visa with the INS. 8 C.F.R. § 214.2(h)(6)(iii)(E). If the petition is granted, the resulting H–2B visa is valid for one year. 8 C.F.R. § 214.2(h)(9)(iii)(C). Extensions of the H–2B visa require repetition of the certification process. Gordon *et al., supra,* § 20.10[1], at 20–120.

Finally, 8 U.S.C. § 1324c provides in relevant part,

> It is unlawful for any person or entity knowingly ... to prepare, file, or assist another in preparing or filing, any application for benefits under this chapter, or any document required under this chapter, or any document submitted in connection with such application or document, with knowl-

edge or in reckless disregard of the fact that such application or document was falsely made or, in whole or in part, does not relate to the person on whose behalf it was or is being submitted.

8 U.S.C. § 1324c(a)(5) (1994). The statute defines the term "falsely make" as "to prepare or provide an application or document, with knowledge or in reckless disregard of the fact that the application or document contains a false, fictitious, or fraudulent statement or material representation, or has no basis in law or fact, or otherwise fails to state a fact which is material to the purpose for which it was submitted." *Id.* § 1324c(f). The statute provides for an administrative hearing followed by judicial review, and permits the imposition of a cease and desist order and a civil monetary penalty. *Id.* § 1324c(d)(3).

### B. *Plaintiff's Claim*

■ Plaintiff has no standing to assert a claim under the INA because the statute does not create a private right of action to redress a violation that results when an employer submits false information as part of a labor certification application or illegally hires an alien when domestic workers are available. For plaintiff's claim to succeed, the statute must create an implied right of action in plaintiff's favor. The Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), established the standard for determining whether a private right of action could be inferred from a federal statute:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purpose of the legislative scheme to imply such a rem-

<hr>

**2.** If the Secretary of Labor refuses to issue the certification, the regulations permit an applicant to submit countervailing evidence contesting the

Secretary's decision directly to the INS. 8 C.F.R. § 214.2(h)(6)(iv).

edy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (quotations and citations omitted).

First, plaintiff was not one of those for whose special benefit the statute was enacted and the INA does not create a federal right in favor of plaintiff. In discussing statutes from which a private right of action has been inferred, the Supreme Court has stated, "[I]n those situations in which we have inferred a federal private cause of action not expressly provided, there has generally been a clearly articulated federal right in the plaintiff ... or a legislative scheme governing the relationship between the plaintiff class and the defendant class in a particular regard." *Cort,* 422 U.S. at 82, 95 S.Ct. at 2090; *see also Cannon v. University of Chicago,* 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 1954 n. 13, 60 L.Ed.2d 560 (1979) ("[T]his Court has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case.... Conversely, the Court has been especially reluctant to imply causes of action under statutes that create duties on the part of persons for the benefit of the public at large."). For instance, in *Cannon,* the Supreme Court inferred a private right of action from Title IX of the Education Amendments of 1972, which provided: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." *Cannon,* 441 U.S. at 681–82, 99 S.Ct. at 1949–50. The Court found that the statutory language clearly articulated a federal right in favor of the plaintiff, a female student who claimed to have been discriminated against on the basis of her sex. *Id.* at 694, 99 S.Ct. at 1956.

■ The INA is a regulatory statute that establishes the circumstances under which people may be admitted to the United States.

In mandating the labor certification process at issue here, Congress required that the Secretary of Labor ensure that an employer has met certain requirements before issuing a visa. Congress did not confer any rights on domestic workers or regulate the relationship between domestic workers and employers. It merely created a process for employers to obtain H–2B visas for alien workers, which incidentally benefits domestic workers by requiring domestic recruitment. Although plaintiff may have been interviewed as part of the process necessary to obtain certification under the INA and its regulations, the statute does not create rights in his favor. *See also Collyard v. Washington Capitals,* 477 F.Supp. 1247, 1255 (D.Minn.1979) ("The [INA] is merely a regulatory statute administering the immigration and naturalization of aliens. The Act does not regulate the direct relationship between domestic workers and employers.").

■ Second, Congress did not reveal any intention to create a remedy for domestic workers. The statutory language imposes duties on federal departments and agencies, not upon employers. *See, e.g., Universities Research Assoc., Inc. v. Coutu,* 450 U.S. 754, 772, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981) ("[T]here would be far less reason to infer a private remedy in favor of individual persons where Congress, rather than drafting the legislation with an unmistakable focus on the benefited class, instead has framed the status simply as a general prohibition or command to a federal agency.") (quotations and citations omitted); *Thye v. United States,* 109 F.3d 127, 129 (2d Cir.1997) ("Statutory provisions that are phrased as general prohibitions or commands to federal agencies are unlikely to give rise to private rights of action."). The regulations also are focused on the duties of federal officials. Further, the two statutory sections setting forth the requirements for H–2B visas are essentially definitional. Section 1101(a)(15) defines those aliens considered nonimmigrants and § 1182 defines those aliens who may be excluded. A section that merely defines should not be relied upon to show that Congress intended to create a private right of action to enforce what is included in or excluded from

the definition. *See Chavez v. Freshpict Foods, Inc.*, 322 F.Supp. 146, 148 (D.Colo. 1971), *aff'd*, 456 F.2d 890 (10th Cir.), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492 (1972). Further, the section that seems to prohibit submission of a false certification application—8 U.S.C. § 1324c— provides only for governmental investigation and enforcement, and provides no evidence that Congress intended a private right of action in favor of domestic workers.[3]

Moreover, the "administration and enforcement of [the INA] is specifically delegated and entrusted to certain federal officials, federal departments, and federal agencies." *Chavez*, 322 F.Supp. at 148; see 8 U.S.C. § 1103 (1994) ("The Attorney General shall be charged with the administration and enforcement of this chapter and all other laws relating to immigration and naturalization of aliens.... "). The statute places responsibility for decisions regarding temporary workers in the hands of the Attorney General: "The question of importing any alien as a nonimmigrant under section 1101(a)(15)(H) ... of this title in any specific case or specific cases shall be determined by the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer." 8 U.S.C. § 1184(c) (1994). The imposition of duties on public officials provides further evidence that Congress did not intend to create a private right of action. *See Dowling v. United States*, 476 F.Supp. 1018, 1020 (D.C.Mass.1979) ("Section 1184(c) contemplates administration by the Attorney General, not private citizens, and it cannot be viewed as authorizing a private right of action.").

Third, it would not be consistent with the legislative scheme to find an implied right of action. Giving domestic employees rejected for jobs taken by individuals with H–2B visas the right to sue employers on the basis of fraudulent submissions to the Secretary of Labor would not advance the main purpose of the INA—*ie.*, to establish standards for entry of aliens into the United States. To the extent that a private right of action might indirectly advance that purpose by deterring employers from helping otherwise excludable aliens enter the United States, such a remote beneficial effect cannot alone compel a finding that Congress intended to imply a right of action.

■ Finally, if the claimed private right of action concerned an area traditionally regulated by state law, that would weigh against finding an implied federal right of action. Here, immigration is governed by federal law, but this factor alone cannot justify finding an implied private right of action. *See Thye*, 109 F.3d at 129; *Prieto v. Gluch*, 913 F.2d 1159, 1166 (6th Cir.1990), *cert. denied*, 498 U.S. 1092, 111 S.Ct. 976, 112 L.Ed.2d 1061 (1991). Plaintiff has not satisfied the *Cort* test and I find no implied federal right of action under the INA against employers.

Several other courts also have held that no private right of action exists against employers by domestic workers who claimed that they were not hired because the employer hired aliens in violation of the provisions of the INA relating to temporary alien workers. *See Lopez v. Arrowhead Ranches*, 523 F.2d 924, 926 (9th Cir.1975); *Flores v. George Braun Packing Co.*, 482 F.2d 279, 279 (5th Cir.1973); *Chavez*, 456 F.2d at 893–94; *Dowling*, 476 F.Supp. at 1020–21; *cf. Collyard*, 477 F.Supp. at 1256 (finding no private right of action by domestic workers against federal officials based upon INA statutory provisions relating to temporary employment of aliens).

Research discloses only one case where a court has inferred a federal private right of action on behalf of a domestic worker against an employer arising from the employer's unlawful employment of a temporary alien worker. In *Garrison v. OCK Constr. Ltd.*, 864 F.Supp. 134 (D.Guam 1993), a domestic worker alleged that an employer "fraudulently denied him employment in order to ensure

---

**3.** Further, although a criminal prosecution might be brought under the general statute covering false statements to an agency, 18 U.S.C. § 1001, or possibly under the statute criminalizing false statements in matters relating to immigration, 18 U.S.C. § 1015, there is little question that plaintiff has no private right of action under those statutes. *See Federal Savings and Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137–39 (4th Cir.1987); *Johnson v. Cullen*, 925 F.Supp. 244, 251 (D.Del. 1996); *Williams v. McCausland*, 791 F.Supp. 992, 1001 (S.D.N.Y.1992).

certification of an alien worker for the same job." *Id.* at 135. The Court found that the plaintiff could state a claim under the INA, relying on "the unique situation of Guam's immigration laws," *id.* at 137, and a group of cases which it claimed had found a private right of action under the INA.

There are two differences between alien labor certifications for Guam and alien labor certifications for the rest of the United States. First, the Governor of Guam, rather than the Secretary of Labor, has authority to issue Guam labor certifications. 8 C.F.R. § 214.2(h)(6)(v) (1997). Second, the regulations give courts the authority to adjudicate whether the Governor of Guam's certification was procured fraudulently. 8 C.F.R. § 214.2(h)(6)(v)(H)(1). To the extent that *Garrison*'s holding was based on the unique rules for alien labor certifications in Guam, that case is distinguishable on that basis. Here, the work at issue was not to be performed in Guam; therefore, the Secretary of Labor had authority over the labor certification process, and there is no regulation which provides for court review of the Secretary of Labor's certification.

However, the *Garrison* Court suggested that a private right of action exists for domestic workers under the INA even outside Guam. It relied on several cases which it claimed had "found private injuries on behalf of domestic workers in situations where aliens had been hired." 864 F.Supp. at 135. It read these cases to conflict with the cases noted above which held that a domestic worker has no federal private right of action under the INA against prospective employers. However, none of the cases cited by *Garrison* actually supports the finding of a private right of action under the INA in this case, and none conflicts with the cases cited above.

The *Garrison* Court cited *International Union of Bricklayers and Allied Craftsmen v. Meese*, 761 F.2d 798 (D.C.Cir.1985), in which the plaintiffs, several unions, sued the Attorney General, the Secretary of State and the INS, claiming that internal INS guidelines relating to the admission of temporary alien workers bypassed procedures required by the INA. The Court found subject matter jurisdiction because the plaintiffs charged that the INS guidelines violated the procedure required by the INA, and "federal courts have jurisdiction over this type of case to assure that the executive departments abide by the legislatively mandated procedures." *Id.* at 801. Citing the prudential standing requirement that a plaintiff fall within the "zone of interests" protected or regulated by the statute at issue, the Court found that the plaintiffs fell within the zone of interests of the INA sections at issue in that case, relating to temporary employment of alien workers. The Court noted that for a plaintiff to fall within the zone of interests, he must show "some indicia—however slight—that [he] was intended to be protected, benefited or regulated by the statute under which suit is brought." *Id.* at 804 (quotations and citations omitted). The Court found that the section relating to employment of temporary alien workers showed a "congressional concern for and a desire to protect the interests of the American workforce," and held that the plaintiffs had standing. *Id.*

Similarly, in *International Longshoremen's and Warehousemen's Union v. Meese*, 891 F.2d 1374 (9th Cir.1989), the plaintiffs, a union and several of its locals, charged that the INS interpretation and application of a statutory provision was unlawful. The Court found subject matter jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"), which provides a right to judicial review in favor of any person adversely affected or aggrieved by agency action. 891 F.2d at 1378. Addressing the plaintiffs' standing, the Court found that the plaintiffs were within the INA's zone of interests, because "[a] primary purpose of the immigration laws, with their quotas and certification procedures, is to protect American laborers." *Id.* at 1379. Other cases also have found that domestic workers are within the zone of interests of the INA when they claim that actions by the Secretary of Labor violated the INA. *See Martinez v. Reich*, 934 F.Supp. 232, 235–36 (S.D.Tex.1996); *Comite De Apoyo Para Los Trabajadores Agricolas (CATA) v. Dole*, 731 F.Supp. 541, 544 (D.D.C. 1990).

Contrary to the *Garrison* Court's reading of these cases, they do not suggest that a domestic worker has an implied right of action under the INA against an employer. Rather, these cases all involved challenges to INS or Secretary of Labor actions which were alleged to be contrary to statute and therefore were actionable under the APA, or as the *International Union of Bricklayers* Court held, under other authority permitting such actions to ensure that "executive departments abide by the legislatively mandated procedures." *International Union of Bricklayers,* 761 F.2d at 801. These Courts therefore focused on whether a plaintiff had standing to challenge the particular action as violating the statute; the plaintiffs needed to show only that they fell within the zone of interests of the statute, a minimal showing. As the Supreme Court has stated, "The ["zone of interests"] test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." *Clarke v. Securities Indus. Assoc.,* 479 U.S. 388, 399–400, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987); *see also National Weather Serv. Employees Org. v. Brown,* 18 F.3d 986, 989 (2d Cir.1994).

The plaintiff here, like the plaintiff in *Garrison,* does not challenge an agency action and may not proceed under the APA or other authority that confers subject matter jurisdiction over actions against regulatory agencies. Thus, even if plaintiff falls arguably within the statute's zone of interests, he can challenge a violation of the statute by the employer only if the statute creates an implied private right of action in his favor. As noted above, finding an implied private right of action requires a showing that Congress intended to benefit a special class and create a right of action in favor of that class. That showing is more demanding that merely satisfying the zone of interests test. In fact, the Supreme Court in *Clarke* said specifically that *Cort* requires more than satisfying the zone of interests test: "Clearly, the Court was requiring more from the would-be plaintiffs in *Cort* in a showing that their interests were arguably within the zone protected or regulated by the statute at issue in [*Cort*]." *Clarke,* 479 U.S. at 400 n. 16, 107 S.Ct. at 757

n. 16; *see also Hernandez–Avalos v. Immigration and Naturalization Serv.,* 50 F.3d 842, 846 (10th Cir.1995) ("[I]t is more difficult to establish a private right of action than to demonstrate that one's interest falls within the zone of interests protected by the statute."), *cert. denied,* —— U.S. ——, 116 S.Ct. 92, 133 L.Ed.2d 49 (1995). Therefore, even though the cases cited by *Garrison* held that domestic workers fell within the INA's zone of interests, and therefore had standing under the APA or otherwise to contest regulatory actions, those cases do not support a finding of an implied right of action under the INA against employers.

The *Garrison* Court relied on two other cases—*Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982) and *Galindo v. Del Monte Corp.,* 382 F.Supp. 464 (N.D.Ill.1974)—which are also distinguishable. Both concern the Wagner–Peyser Act, 29 U.S.C. § 49 *et seq,*, not the INA. Indeed, the *Galindo* Court actually distinguished its case from cases concerning whether to infer a private right of action under the INA. 382 F.Supp. at 468. *Alfred L. Snapp & Son* dealt with whether a state had parens patriae standing to bring suit, and did not directly address the existence of a private right of action. Because the *Garrison* Court based its decision on the provisions of the INA applicable solely to Guam, and because the case law on which it relied is inapposite to this case, I decline to follow *Garrison.* I find that no private right of action exists under the INA for a domestic worker against an employer based on submission of a fraudulent application for labor certification or on employment of an alien under such a fraudulently obtained certification. Accordingly, plaintiff's first claim must be dismissed.

## III.

■ Plaintiff's claim under the FCA fails as well. The FCA imposes liability on "[a]ny person who ... [*inter alia*], knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval [or] knowingly makes, uses, or causes to be made or used, a false

record or statement to get a false or fraudulent claim paid or approved by the Government [or] conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(1)–(3) (1994). The statute defines "claim" to include "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c) (1994). Therefore, "only (i) actions which have the purpose and effect of causing the government to pay out money where it is not due . . . or (ii) actions which intentionally deprive the government of money it is lawfully owed . . . are considered 'claims' within the meaning of the FCA." *United States ex rel. Windsor v. DynCorp*, 895 F.Supp. 844, 850 (E.D.Va.1995) (citations and quotations omitted).

Here, plaintiff has not alleged that defendant made any false or fraudulent statement which caused the government to pay money or which allowed defendant to deprive the government of money owed. Rather, plaintiff claims that defendant made a fraudulent statement to obtain certification for its alien employee. Such statement is not made in relation to a "claim" as defined by the statute, and plaintiff's FCA action must be dismissed.

■ Although the FCA provides that an action by a private person pursuant to the False Claims Act "may be dismissed only if the Court and the Attorney General give written consent to the dismissal and their reasons for consenting," 31 U.S.C. § 3730(b)(1) (1994), and although the Government in declining to intervene reserved its right to withhold such consent, the Second Circuit has interpreted this provision to require the Government's consent to dismiss only in cases where the plaintiff wishes to discontinue the action voluntarily, not where the court orders dismissal. See *Minotti v. Lensink*, 895 F.2d 100, 103–04 (2d Cir.1990).

Therefore, Government consent to dismiss this action is unnecessary.

## IV.

■ Finally, because plaintiff proceeds pro se, his complaint must be read liberally. There are two other claims which colorably might arise from his complaint. First, plaintiff might press a claim under 8 U.S.C. § 1324b which, *inter alia*, protects United States citizens from discrimination in hiring or discharge on the basis of their citizenship. 8 U.S.C. § 1324b(a) (1994). However, this claim fails both because the statute seems to provide for a purely administrative review of these claims, with provision for appeal of any order to the Court of Appeals, *id.* § 1324b(b)–(j), and because the statute requires that any claim be filed within 180 days of the discriminatory activity; plaintiff filed his claim 15 months after the alleged discriminatory activity.

Second, plaintiff might press a claim under 42 U.S.C. § 1981(a), which prohibits discrimination in the making and enforcement of contracts. However, even if plaintiff could maintain a § 1981 action asserting discrimination based on his American citizenship, which is open to question, *compare Jatoi v. Hurst–Euless–Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir.) (dismissing § 1981 claim because even though § 1981 permits claims of discrimination of the basis of alienage, plaintiff was a United States citizen), *modified*, 819 F.2d 545 (5th Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 709, 98 L.Ed.2d 660 (1988); *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986); *Chacko v. Texas A & M Univ.*, 960 F.Supp. 1180, 1191 (S.D.Tex.1997) (noting that plaintiff was in a protected class under § 1981 because he was a non-citizen); *Rios v. Marshall*, 530 F.Supp. 351, 360–61 (S.D.N.Y. 1981) ("[P]laintiff's allege discrimination on the basis of citizenship, not race, and therefore do not state a claim for relief under § 1981"), *with Cheung v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 913 F.Supp. 248, 251 (S.D.N.Y.1996) (holding that § 1981 prohibits private discrimination on the basis of citizenship), plaintiff's complaint and affirmation, even interpreted liberally, fail to al-

lege any facts, or even conclusory allegations, from which it can be inferred that defendant refused to hire plaintiff because he is a United States citizen. Rather, the only inference that can be drawn from plaintiff's complaint is that defendant did not hire plaintiff because defendant preferred Tukuru, not because plaintiff was a United States citizen.

\*   \*   \*   \*   \*   \*

For the reasons stated above, defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(c) is granted, and plaintiff's complaint is dismissed.

SO ORDERED: