Sona SHAH and Kai Barrett, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

WILCO SYSTEMS, INC., Janet Reno as Attorney General of the United States of America and Alexis M. Herman as Secretary of Labor of the United States of America, Defendants.

No. 99 Civ. 12054(AGS).

United States District Court, S.D. New York.

Nov. 20, 2000.

John F. McHugh, New York City, for Plaintiffs.

Shea Hutchins Lukacsko, Debi Debiak, New York City, for Defendants.

*OPINION AND ORDER*

SCHWARTZ, District Judge.

Plaintiffs, former employees of defendant Wilco Systems ("Wilco"), commenced this action seeking compensatory damages, punitive damages, and injunctive relief arising out of the alleged exploitation of domestic and foreign workers in violation of the Immigration and Nationality Act ("INA"), the Fair Labor Standards Act ("FLSA") and New York state law. Currently before the Court are separate motions to dismiss by Wilco and by defendants Janet Reno and Alexis Herman (the "government defendants"). For the reasons set forth below, Wilco's motion to dismiss is granted in part and denied in part, and the government defendants' motion is granted.

## I. Factual Background

The following facts are accepted as true for the purposes of the motions to dismiss, unless otherwise noted. At all times relevant to the instant action, plaintiff Sona Shah ("Shah") was a citizen of the United States residing in the state of New Jersey. (Second Amended Complaint ("Compl.") ¶ 1.) Plaintiff Kai Barrett ("Barrett") is a citizen of the United Kingdom who worked for Wilco in the United States on an H–1B visa obtained by Wilco; such a visa permits an alien classified as a "nonimmigrant" to work in the United States for a defined period, subject to certain conditions.[1] (*Id.* ¶ 2; 8 U.S.C. § 1182(n).) Defendant Wilco, a corporation organized and existing under the laws of New York with

---

1. Under section 101(a)(15)(H) of the INA, an alien may be authorized to come to the United States temporarily to perform services for an employer, if petitioned for by that employer. Under this "nonimmigrant" category, the alien may be classified as follows: under section 101(a)(15)(H)(i)(a) of the Act as a registered nurse; under section 101(a)(15)(H)(i)(b) of the Act as an alien who is coming to perform services, *inter alia*, in a specialty occupation; under section 101(a)(15)(H)(ii)(a) of the Act as an alien who is coming to perform agricultural labor or services of a temporary or seasonal nature; under section 101(a)(15)(H)(ii)(b) of the Act as an alien coming to perform other temporary services or labor; or under section 101(a)(15)(H)(iii) of the Act as an alien who is coming as a trainee or as a participant in a special education exchange visitor program. These classifications are called H–1A, H–1B, H–2A, H–2B, and H–3, respectively. *See* 8 C.F.R. § 214.2(h)(1)(i).

offices located in New York, provides brokerage processing and related services, including software development, to the financial brokerage industry. (*Id.* ¶ 3; Memorandum of Law in Support of Defendant Wilco Systems, Inc.'s Motion to Dismiss and Strike Portions of the Second Amended Complaint ("Wilco's Mem.") at 1.) According to Wilco, most of its employees are computer programmers who develop, write, and customize its software products. (Wilco's Mem. at 1.) Defendants Janet Reno and Alexis M. Herman are, respectively, the current Attorney General of the United States (the "Attorney General") and U.S. Secretary of Labor (the "Secretary of Labor"). (*Id.* ¶¶ 4, 5.)

On or about September 16, 1996, Shah was hired as a computer programmer to work with the computer program "Gloss," and on or about the same day Barrett was hired by an affiliate of Wilco in London as a systems specialist to work on Wilco's internal computer system. (*Id.* ¶¶ 21, 22.) Both plaintiffs participated in Wilco's training program in London, England, and both apparently stayed on to work in the London offices. (*Id.* ¶ 23.) In the second week of June 1997, Wilco's managing director informed Shah that Wilco was seeking foreign workers for placement in its New York offices, and asked her if she would assist in the recruitment of Indian workers under a program that members of management referred to as "Operation Delhi Belly." (Compl. ¶¶ 26–27, 49.) Plaintiffs allege that Shah was told that Indian workers were needed because "Americans don't make quality workers—they're stupid, they're too expensive and difficult to control." (*Id.* ¶ 26.) Plaintiffs contend that Wilco discriminated against both foreign and domestic workers, and otherwise violated federal and state law in their employment of temporary foreign workers.

The specific allegations with regard to foreign workers focus on Barrett, who was transferred to Wilco's New York office from London on or about June 23, 1997,

purportedly to replace a domestic worker. While on the London payroll, he was paid approximately $27,000 a year, and once on the New York payroll as an H–1B worker, his salary was never more than $48,000. (*Id.* ¶¶ 32–34.) Barrett was purportedly told that his salary was lower than the prevailing market rate because Wilco believed he could not leave his job due to his H–1B status. (*Id.* ¶ 34.) Upon his departure from Wilco, Barrett obtained a job as a computer programmer for which he received a salary of $75,000 and a bonus of $25,000. (*Id.* ¶ 35.)

The allegations with respect to domestic workers focus on Shah. When Shah returned to Wilco's New York office on or about June 22, 1997, she did not receive requested training or work assignments, and "was not provided with a seat, a desk, or a computer and was left idle." (*Id.* ¶ 36.) Despite the fact that domestic workers were qualified for available work assignments, the assignments were filled by foreign workers, who had received additional training not made available to domestic workers like Shah. (*Id.* ¶¶ 37, 38, 53–54.) Shah was eventually assigned to Wilco's consulting team at Goldman Sachs, but was replaced five weeks later by a British employee working on a H–1B visa. In September 1997, she was assigned to Natwest and was subsequently replaced by a foreign employee, and in February 1998 she was assigned to another client, ADP, where she was the only domestic worker among her team of programmers. (*Id.* ¶¶ 40, 42, 45, 46.) Other domestic workers had similar experiences. (*Id.* ¶¶ 43, 44, 47, 48.) Plaintiffs assert that "all rates of pay, training programs and working conditions were [ ] based upon the nationality of a worker." (*Id.* ¶¶ 28, 62.) The nonimmigrant employees working for Wilco, and specifically those working with plaintiff, were being paid significantly less than qualified domestic workers, both those working at Wilco and in the applicable market; the Indian employees were paid less than any other workers. (*Id.* ¶¶ 30,

58, 61, 62, 70.) Moreover, Wilco's foreign workers were also subject to inferior working conditions. (*Id.* ¶¶ 30, 71.)

In early 1998, several American workers were terminated after several of the Indian recruits had completed their training. (*Id.* ¶ 55.) On April 1, 1998, while she was assigned to ADP, Shah was terminated. (*Id.* ¶ 64.) Plaintiffs claim that she was terminated "because she was an American worker, as an example to the Indian workers ... and in retaliation for her discussions and statements [to the other workers] regarding Wilco's employment practices." (*Id.*) In particular, plaintiffs allege that "Wilco discharged [Shah] as a reprisal for her efforts to secure her legal rights and as an attempt to intimidate and prevent foreign workers from looking into theirs ..." (*Id.*) Plaintiffs state that at the meeting at which Shah was fired, "[she] was branded as 'difficult to control' due to her efforts to give Indian employees information Wilco withheld from them in flagrant violation of the laws of the United States," and was isolated from the foreign employees so she would not encounter them when she left Wilco's premises. (*Id.* ¶¶ 65, 66, 68.) Shah was purportedly replaced by a foreign employee. (*Id.* ¶¶ 69, 70.)

Plaintiffs filed the instant action on December 14, 1999. The Second Amended Complaint sets forth class allegations pursuant to which Shah and Barrett are representative members for similarly situated domestic and foreign workers, specifically current and former employees of Wilco who work or worked as computer programmers, systems analysts, technicians, "or who in any way worked with Wilco's software program 'Gloss'" within three years prior to the filing of the action. (*Id.* ¶¶ 6–14.) The basis for plaintiffs' allegations is a comprehensive scheme by Wilco pursuant to which Wilco imported foreign workers in order to displace domestic workers, paid foreign workers a salary that was "far below the prevailing wages for their skills in the local United States market" based on their nationality, and failed to adequately train domestic workers or to pay them a competitive salary. (*Id.* ¶¶ 28, 30, 44, 54, 57, 62.)

Plaintiffs assert eight causes of action: (i) against Wilco for employing domestic and H–1B workers under illegal terms, in violation of the INA, specifically 8 U.S.C. § 1182(n) ("Section 1182(n)"); (ii) against Wilco for discrimination against plaintiffs in the terms and conditions of employment in violation of unstated "Federal and State law"; (iii) against Wilco for retaliation against Shah in violation of Section 1182(n) and the FLSA, 29 U.S.C. § 215 ("Section 215"); (iv) against Wilco for failure to pay its employees overtime or holiday pay, in violation of the FLSA, 29 U.S.C. §§ 207, 216(d); (v) against Wilco for discrimination in violation of the unfair employment practices provision of the INA, 8 U.S.C. § 1324b ("Section 1324b"); (vi) against Wilco for discrimination in violation of the New York Human Rights Law, N.Y. Executive Law § 290, and the New York City Human Rights Law, Sec. 8–107 of the New York City Administrative Code; (vii) against Wilco for breach of contract and the duty of good faith and fair dealing; and (viii) against the government defendants for their failure to police the activities of entities seeking the admission of nonimmigrant workers, in violation of the Section 1182(n). (*Id.* ¶¶ 73–121.)

Defendant Wilco now moves to dismiss plaintiffs' first, second, third, and fifth causes of action as they relate to the INA for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1)("Rule 12(b)(1)"), or for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). Wilco also moves, pursuant to Fed.R.Civ.P. 12(f)("Rule 12(f)"), to strike plaintiffs' class allegations as they relate to the INA as irrelevant to the instant action. Moreover, to the extent the Court does not dismiss plaintiffs' first or second causes of action, Wilco moves for a more definite statement of these claims pursuant to Fed. R.Civ.P. 12(e)("Rule 12(e)"). (Wilco's

Mem. at 4 n. 2.) Further, Wilco moves to dismiss plaintiffs' third cause of action as it relates to the FLSA, and plaintiffs' seventh claim pursuant to Rule 12(b)(6).[2] The government defendants move to dismiss plaintiffs' eighth claim under Rule 12(b)(1) for lack of subject matter jurisdiction.

## II. Discussion

### A. Motion to Dismiss Standard

On a Rule 12 motion to dismiss, the Court must accept the factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)(noting that factual allegations in the complaint must be accepted as true on motion to dismiss); *Press v. Quick & Reilly, Inc.,* 218 F.3d 121, 128 (2d Cir.2000) (same). In order to survive dismissal, a plaintiff must assert a cognizable claim and allege facts that, if true, would support such a claim. *See Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997).

■ On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the Court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such

as affidavits, and if necessary, hold an evidentiary hearing. *See Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000). However, when matters outside the pleadings are presented on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment and afford all parties the opportunity to present supporting material. *See Morelli v. Cedel,* 141 F.3d 39, 46 (2d Cir.1998)(citing *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972)).

### B. Claims Against Wilco

### 1. Claims For Violation of the INA

Wilco moves to dismiss plaintiffs' first, second, and third claims on the ground that plaintiffs failed to exhaust their administrative remedies before filing suit in federal court. Each of these causes of action is based, at least in part, on asserted violations of the INA, specifically Section 1182(n).[3] Wilco asserts that Section 1182(n) contains a comprehensive regulatory enforcement scheme that entrusts the investigation of complaints and the enforcement of violations of the statute to the Secretary of Labor and the Attorney General. (Wilco's Mem. at 5, citing 8 U.S.C. §§ 1182(n)(2), (5).) Thus, Wilco asserts that there is no private right of action to enforce this provision of the INA in federal court "unless and until the administra-

---

**2.** Wilco also moves to dismiss plaintiffs' eighth claim pursuant to Rule 12(b)(1). (Wilco's Mem. at 8–9.) The Court does not consider these arguments because this claim was not brought against Wilco. This claim will be considered on the government defendants' motion to dismiss.

**3.** Plaintiffs' first cause of action asserts violations of "laws of the United States," and the INA, without citing a specific provision. (Compl.¶¶ 74–75.) However, the allegations are grounded in Wilco's treatment of domestic and foreign workers in the context of the latter's receipt of H–1B visas, which directly

implicates Section 1182(n). (*Id.* ¶¶ 75–76, 80–81.) The second cause of action asserts that Wilco discriminated against plaintiffs based on nationality or national origin, in violation of unstated "Federal and State law." (*Id.* ¶¶ 82–88.) This allegation may encompass provisions of Section 1182(n) that prohibit discrimination against employees, specifically in the context of retaliation. *See* 8 U.S.C. § 1182(n)(2)(c)(iv). The third cause of action asserts a retaliation claim on behalf of Shah in violation of Section 1182(n) and the FLSA. (Compl.¶¶ 89–94.)

tive remedies have been exhausted." (*Id.* at 3.)

Plaintiffs respond that administrative enforcement provisions, such as the ones at issue here, do not preempt or exclude other remedies, and that Wilco has overlooked certain "common law causes of action" that state law affords plaintiffs in the context of the statutory violations. (Memorandum of Law in Opposition to Defendant Wilco's Motion to Dismiss ("Pls.' Mem.") at 4–5.) In addition, plaintiffs contend that Wilco is estopped from asserting an exhaustion defense because Wilco has "defeated" the INA's "statutory goals and provisions ... through its comprehensive evasion of legal duties," and that exhaustion should be waived in any event because recourse to the administrative proceedings would be futile and would cause plaintiffs irreparable harm. (*Id.* at 4–5, 14–18.)

Under the doctrine of exhaustion of administrative remedies, "a party may not seek federal judicial review ... until the party has first sought all possible relief within the agency itself." *Howell v. INS,* 72 F.3d 288, 291 (2d Cir.1995); *see also Guitard v. United States Secretary of Navy,* 967 F.2d 737, 740 (2d Cir.1992)(citing *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). The requirement of exhaustion "may arise from explicit statutory language or from an administrative scheme providing for agency relief." *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 592 (2d Cir.1993). If a party fails to exhaust administrative remedies, then the court may dismiss the action. *See DiLaura v. Power Auth.,* 982 F.2d 73, 79 (2d Cir.1992).

█ When a federal statute provides for administrative remedies in lieu of or as a prerequisite to a right to sue in federal court, a private right of action does not exist "unless congressional intent can be inferred from the language of the statute, the statutory structure, or some other source." *Karahalios v. Nat'l Fed'n of Fed. Employees,* 489 U.S. 527, 532–33, 109 S.Ct.

1282 (1989)(citing *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988)(noting that congressional intent is the Court's "focal point" in determining whether to infer a private right of action from a federal statute)). As the Supreme Court has stated, in such cases, "[i]n the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided [in the statute] precisely the remedies it considered appropriate." *Id.* (citing *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 15, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). Further, while the defense of exhaustion of administrative remedies generally implicates jurisdiction, and hence Rule 12(b)(1), the existence of a private right of action is a question of whether plaintiffs have stated a claim upon which relief can be granted. *See Rodriguez v. DeBuono,* 175 F.3d 227, 233 (2d Cir.1999). Accordingly, the Court will consider Wilco's motion to dismiss plaintiffs' INA-related claims under Rule 12(b)(6).

Section 1182(n) contains a comprehensive regulatory enforcement scheme that provides for the investigation of claims and for remedies under the circumstances presented by this case. The Section directs the Secretary of Labor and Attorney General to establish processes for the receipt, consideration, and disposition of discrimination complaints and those concerning an employer's alleged failure to satisfy the enumerated requirements of a labor condition application, the application which employers must file to obtain an H–1B visa. *See* 8 U.S.C. §§ 1182(n)(2)(A), 2(C), 5(B). Enforcement procedures have been established by way of extensive administrative regulations. *See* 20 C.F.R. §§ 655.800–655.855 (detailing enforcement scheme, with investigative authority delegated to the administrator of the Wage and Hour Division of the Department of Labor).

Section 1182(n) does not provide for a private right of action in federal court in the first instance for complaints concern-

ing an employer's violation of the Section. However, Section 1182(n) contemplates judicial review at the conclusion of the administrative proceedings. For complaints filed under Section 1182(n)(2), an aggrieved party is required to file a complaint with the Wage and Hour Division of the Department of Labor, which reviews and investigates the complaint and then issues a determination. *See* 8 U.S.C. § 1182(n)(2); 20 C.F.R. §§ 655.805, 655.815. If it is dissatisfied with this determination, the aggrieved party may request a hearing before an administrative law judge ("ALJ"), who is required to issue a decision. 20 C.F.R. §§ 655.815, 655.820, 655.840. Thereafter, any party may petition for review by the Secretary of Labor. 20 C.F.R. §§ 655.840, 655.845. Finally, the Secretary of Labor's decision may be appealed by any party to the appropriate United States District Court. 20 C.F.R. § 655.850.

Section 1182(n)(5), which may also be implicated by plaintiffs' allegations in this case, contains a different procedure. Under that Section, a domestic worker who has been rejected for a job that is the subject of a labor condition application is first required to file a complaint with the Attorney General. 8 U.S.C. § 1182(n)(5)(B). Upon finding reasonable cause in the complaint, the Attorney General must initiate binding arbitration proceedings. 8 U.S.C. § 1182(n)(5)(C). The arbitrator is required to issue a written opinion, and if a violation is found, the Attorney General may impose administrative penalties against the employer, or in certain circumstances, reverse or modify the arbitrator's opinion. 8 U.S.C. § 1182(n)(5)(D). This decision is subject to judicial review in the appropriate United States Court of Appeals. 8 U.S.C. § 1182(n)(5)(D).

Like Section 1182(n), Section 1324b has an extensive administrative enforcement mechanism, detailed in the statute and related administrative regulations, which requires exhaustion of administrative remedies before filing a claim in federal court. *See* 8 U.S.C. §§ 1324b(b)-(j); 28 C.F.R. §§ 44.100 et seq. Persons claiming a violation of Section 1324b may file a charge with the Special Counsel for Immigration–Related Unfair Employment Practices. After an initial investigation by the Special Counsel, a complaint may be filed with an ALJ by the Special Counsel or the complainant. 8 U.S.C. §§ 1324b(b)-(d). After a hearing, the ALJ may either issue an order dismissing the complaint or imposing appropriate remedies. 8 U.S.C. §§ 1324b(e)-(h). The role of the courts is set forth in detail in the section. "In case of contumacy or refusal to obey a subpoena lawfully issued" by the ALJ, a "district court of the United States may issue an order requiring compliance with the subpoena and any failure to obey such order may be punished by such court as a contempt thereof." 8 U.S.C. § 1324b(f)(2). Further, the ALJ's order may be appealed by an unsuccessful party to the appropriate United States Court of Appeals; where there is no appeal, the Special Counsel "may petition the . . . [appropriate] district court . . . for the enforcement of the order of the administrative law judge, by filing in such court a written petition praying that such order be enforced." 8 U.S.C. §§ 1324b(i)-(j)(1),(j)(2). Finally, if upon appellate review the determination of the administrative law judge is affirmed, the appellate court may enter a decree of enforcement. 8 U.S.C. § 1324b(j)(3).

These regulatory processes indicate Congress' intent to limit the enforcement for alleged violation of Sections 1182(n) and 1324b to the administrative agencies in charge of the processes, and only implicate judicial review once the administrative procedure has been exhausted. Nothing in either statutory provision indicates that Congress intended to provide a private right of action in federal court to enforce violations of Sections 1182(n) or 1324b in the first instance. In the absence of strong indicia of contrary congressional intent, the Court concludes

that these statutes, and related regulations, provide "precisely the remedies [Congress] considered appropriate." *Karahalios, supra*, 489 U.S. at 533, 109 S.Ct. 1282; *see also United States v. Richard Dattner Architects*, 972 F.Supp. 738, 747 (S.D.N.Y.1997) (stating that Section 1324b "seems to provide for a purely administrative review of those claims");[4] *id.* at 742 (finding, in the context of 8 U.S.C. § 1324c, that "plaintiff has no standing to assert a claim under the INA because the statute does not create a private right of action to redress a violation that results when an employer submits false information as part of a labor certification application or illegally hires an alien when domestic workers are available"); *Murtaza v. N.Y. City Health and Hospitals Corp.*, No. 97 Civ. 4554, 1998 WL 229253, at *4 (E.D.N.Y. Mar. 31, 1998) (finding that plaintiff had no private right of action to assert discrimination under Section 1324b).

Acknowledging that the statutes in question do not explicitly provide for an additional remedy, plaintiffs claim that they have an implied private right of action. In asserting that the legal remedies provided

under Section 1182(n) are not exclusive, plaintiffs rely on Section 1182(n)(2)(H), which states that "[n]othing in this subsection shall be construed as superseding or preempting any other enforcement-related authority under this chapter (such as the authorities under section 1324b of this title) or any other Act." 8 U.S.C. § 1182(n)(2)(H); (Pls.' Mem. at 6–7, 9; Compl. ¶ 92.) However, this provision does not treat a complainant's rights, but rather the scope of the government's enforcement authority under the immigration laws, as they appear in Chapter 12 of Title 8 of the United States Code. Thus, plaintiffs' argument that this provision warrants the finding of an "implied private remedy" is unavailing.[5]

Second, plaintiffs state that they have a state common law right to sue for Wilco's immigration law violations, and appear to suggest that Wilco is "strictly liable" in tort for the alleged violations. (Pls.' Mem. at 13.) Such a common law right cannot exist in the abstract; it must be applied to state law claims. The only state law claim plaintiffs assert in their Complaint is for breach of contract, which is discussed fur-

---

4. The court in *Dattner* specifically declined to follow *Garrison v. OCK Const. Ltd.*, 864 F.Supp. 134 (D.Guam 1993), relied on by plaintiffs in this case, because the *Garrison* court relied on "the unique situation of Guam's immigration laws" in finding a private right of action under the INA, and cited other cases inapplicable in *Dattner. See Dattner*, 972 F.Supp. at 744–46. The same rationale applies in this instant action.

5. In asserting an implied private right of action, plaintiffs rely on the factors stated as relevant in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). While these factors are not, strictly speaking, applicable because the statutes in question provide for an express remedy, *see Government of Guam v. Am. President Lines*, 28 F.3d 142, 145 (D.C.Cir.1994), application of those factors would lead to the same result. While plaintiffs may meet the first and probably the third *Cort* factors—that, respectively, they are members of classes "for whose special benefit the statute was enacted" and that it is "consistent with the underlying purpose of the legislative scheme to imply such a remedy,"

the second *Cort* factor, whether there is an "indication of legislative intent ... either to create such a remedy or deny one," argues dispositively against implying the remedy. This conclusion is supported by the consideration that the chief goal of the *Cort* analysis is discovering legislative intent. *See Karahalios, supra*, 489 U.S. at 536, 109 S.Ct. 1282 (citing *Cort* and stating that the issue of a private right of action is "resolved by a straightforward inquiry into whether Congress intended to provide a private cause of action"); *Guam, supra*, 28 F.3d at 145 (same).

Plaintiffs reliance on *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 609–10, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982) is also misplaced. In *Snapp*, the Supreme Court found that Puerto Rico had standing to sue under the immigration laws *in parens patriae* on behalf of Puerto Rican workers in order to enforce a federal employment service scheme in which Puerto Rico participated. The Court never addressed the issue of an individual's private right of action under the immigration laws, or under Sections 1182(n) and 1324b in particular. This case is therefore inapposite here.

ther *infra.*[6] Moreover, as plaintiffs appear to acknowledge, even if such a common law right to sue existed in this case, it would not provide plaintiffs with a private right of action under federal law. (*Id.*)

Finally, plaintiffs contend that even if exhaustion applies, Wilco should be equitably estopped from asserting it as a defense here. Plaintiffs argue that estoppel is justified because (i) Wilco blocked the enforcement of the existing statutory scheme by violating certain provisions of the immigration laws, specifically, failing to post H–1B visa applications or information related to those applications in public at its offices or at the client sites where workers were assigned, (Pls.' Mem. at 17), and (ii) the foreign workers would suffer irreparable harm if they were forced to exhaust the required administrative procedures, because they may be deported illegally as a result, (*Id.*).[7]

■ These contentions are unavailing. First, plaintiffs' reliance on equitable estoppel is misplaced, because the doctrine only applies to circumstances where the defendant affirmatively engages in conduct to prevent plaintiffs from filing suit, for example, as a result of fraud, misrepresentation, deception, or intentional concealment. *See Meridien Int'l Bank Ltd. v. Government of Republic of Liberia,* 23 F.Supp.2d 439, 447 (S.D.N.Y.1998) (citing *Buttry v. General Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir.1995)) (discussing the standard under federal law); *cf. Farkas v. Farkas,* 168 F.3d 638, 642 (2d Cir.1999) (discussing the standard under New York law). Plaintiffs' Complaint does not allege such fraud or misrepresentation here. In any event, the failure of Wilco to post the labor condition applications or related information is not a violation of the INA, as Section 1182(n) only suggests posting as one of the methods for providing notice of the application to workers. *See* 8 U.S.C. § 1182(n)(1)(C)(ii).[8] Plaintiffs do not allege that notice of the INA procedures was not provided, or facts that would lead the Court to conclude that they were deprived of necessary information. Second, while waiver of administrative exhaustion is permitted where plaintiffs establish that they

**6.** In support of their "state common law claim," plaintiffs assert that their "complaint properly sets for [sic] the rights and duties created by the law [i.e. the INA], the fact that both classes of plaintiffs are protected thereby and the defendant's violation thereof." (Pls.' Mem. at 13.) Their submissions also characterize their first and third causes of action as asserting "tort[s] of violations of law causing the injury sought to be prevented." (Pls.' Mem. at 1–2.) Such a characterization is vague and misleading because it does not reflect the causes of action asserted in the Complaint. Moreover, as defendant states, plaintiffs have not pointed to any statutory duty imposed on defendant for the specific benefit of plaintiffs. (Reply Memorandum of Law in Further Support of Wilco Systems, Inc. Motion to Dismiss and Strike Portions of the Second Amended Complaint ("Wilco's Rep.") at 7.) The Court therefore declines to infer a state law claim related to the violation of the INA.

**7.** In asserting equitable estoppel, plaintiffs rely heavily on *Quackenbush v. Johnson City Sch. Dist.,* 716 F.2d 141, 147 (2d Cir.1983). In this case, without ever addressing the concept of estoppel, the Second Circuit found that the doctrine of exhaustion precluded review of the federal education statute alleged to have been violated, but allowed the plaintiff a separate statutory remedy under the Civil Rights Act, 42 U.S.C. § 1983, where the defendants had interfered with the procedural safeguards due to the plaintiff under the education statute. Thus, even if it were determined that Wilco had obstructed plaintiffs' access to the administrative remedies under the INA, rather than militate in favor of estoppel or of an implied private right of action under the sections of the immigration laws at issue here, the *Quackenbush* holding supports plaintiffs' ability to file suit under provisions outside of the INA to redress their alleged injuries.

**8.** Plaintiffs have submitted a sample labor condition application that implies that such posting is required. (Ex. B to Pls.' Mem.) However, the letter of the statute specifically provides that posting is not the exclusive means of providing notice of an application to workers in the occupations where H–1B non-immigrants will be employed, where a bargaining representative has not been notified. 8 U.S.C. § 1182(n)(1)(C)(ii).

will suffer irreparable harm if forced to endure the administrative procedure, or that resort to the administrative process would be futile, see *Howell, supra*, 72 F.3d at 291, plaintiffs have established neither in this case. Plaintiffs have not established the possibility of irreparable harm through illegal deportation. They assert in conclusory fashion that foreign workers are prevented from filing administrative claims because the Attorney General has not published certain regulations, mandated by Congress, designed to protect foreign workers from deportation upon a finding of fraudulent filings by their employer. (Pls.' Mem. at 17.) However, plaintiffs have failed to establish that such a congressional mandate exists, because they have not specified the regulations in question, and cite only to a 1988 House of Representatives report in support of their conclusions. (*Id.*) Even if the Attorney General has failed to create (or amend) the regulations in question, the harm to foreign workers is speculative at best, because plaintiffs do not allege that any foreign worker is currently at risk of deportation. Moreover, plaintiffs cannot properly allege futility; plaintiffs are not challenging the regulatory procedures themselves, or any aspect of such procedures that would eliminate the possibility of redress through the administrative framework. See *Howell, supra*, 72 F.3d at 293; see also *Bowen v. City of New York*, 476 U.S. 467, 483–85, 106 S.Ct. 2022, 90 L.Ed.2d 462 (citing *Mathews v. Eldridge*, 424 U.S. 319, 328–31, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

Accordingly, the Court dismisses plaintiffs' first, second, and third causes of action with·prejudice to the extent that they assert claims pursuant to Section 1182(n); plaintiffs' fifth cause of action is dismissed in its entirety with prejudice. Because of the patent ambiguities therein, plaintiffs are required, pursuant to Rule 12(e), to provide defendant with a more definite statement of the remaining allegations contained in its first and second claims within 20 days from the date of this Opinion.[9]

## 2. FLSA Claim

Plaintiffs' third claim includes an allegation of retaliation under Section 215 of the FLSA, to the effect that Shah was discharged in retaliation for having discussions with her Indian co-workers about Wilco's employment practices, specifically with regard to wages. (Compl.¶¶ 64, 92.) Wilco moves to dismiss this claim pursuant to Rule 12(b)(6).

The FLSA's anti-retaliation provision makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). Thus, the plain language of this provision limits the cause of action to retaliation for filing a formal wage complaint, instituting a proceeding, or testifying in connection with such a proceeding. See *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir.1993). Under the law of this Circuit, employment decisions taken in response to complaints to a supervisor, or discussions with co-workers, are not actionable under the FLSA. See *id.* (rejecting more expansive interpretation of Section 215(a)(3) of the courts of other circuits and the EEOC); see also *Acosta v. The Yale Club of New York City*, No. 95 Civ. 0888, 1995 WL 600873, at *4 (S.D.N.Y. Oct. 12, 1995) (dismissing FLSA retaliation claim based on oral complaints to management by employees because no formal complaint had been

---

9. As Wilco points out, plaintiffs appear to assert in their motion papers that their second cause of action contains a Title VII claim based on allegations of national origin discrimination. (Pls.' Mem. at 2.) Such a claim is not apparent from on the face of the Complaint. Similarly, as noted *supra*, plaintiffs' characterization of its first cause of action in its motion papers is vague and misleading.

filed); *Booze v. Shawmut Bank*, 62 F.Supp.2d 593, 598 (D.Conn.1999) (dismissing FLSA claim because employee's informal workplace complaints regarding the timing of her overtime pay were not protected activity for the purpose of the FLSA).

In this case, plaintiffs have not alleged, either in the Complaint or submissions on the instant motion, that Wilco's decision to terminate Shah's employment was based on her filing of a formal wage complaint or otherwise instituting or testifying in connection with such a proceeding. Plaintiffs simply assert that "the defendant took an adverse employment action against plaintiff due to its becoming aware of plaintiff's protected activity." [10] (Pls.' Mem. at 19.) Accordingly, the Court dismisses plaintiffs' FLSA retaliation claim with prejudice.

### 3. Contract Claim

In their seventh cause of action, plaintiffs claim that Wilco breached employment agreements with both plaintiffs, and the duty of good faith and fair dealing owed to plaintiffs under those agreements. (Compl.¶¶ 110, 112–114, Exs.A, B.)

Pursuant to New York choice of law rules, *see Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir.1989) (stating that a federal court sitting in diversity applies the choice of law rules of the forum state), plaintiffs' contract claim is governed by New York law. New York has the most significant interest in the litigation because the events and transactions in question, to the extent that they occurred in the United States, occurred in New York, and the contracts in question were executed and/or performed in New York. *See Lazard Freres & Co. v. Protective Life Ins., Co.*, 108 F.3d 1531, 1539 (2d Cir.1997) (noting that place of contracting and place of performance are given heaviest weight under

New York choice of law analysis). The parties do not contend otherwise, as they have supported their arguments on the basis of New York case law alone.

■ In order to state a breach of contract claim under New York law, a plaintiff must allege (i) the existence of a contract, (ii) performance of the contract by one party, (iii) breach by the other party, and (iv) damages. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir.2000); *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F.Supp. 285, 290 (S.D.N.Y.1995). However, under the relaxed federal pleading requirements, *see Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors, Inc.*, No. 96 Civ. 6320, 1997 WL 370595, at *7 (S.D.N.Y. July 1, 1997) (noting that federal rules govern pleading requirements because pleading is procedural), each element of the claim need not be separately pleaded. *See id.* Rather, it is enough that the pleading "contain 'a short and plain statement of the claim' sufficient to put the [adverse party] on notice of the grounds for which the [claimant] seeks relief." *Reuben H. Donnelley Corp., supra*, 893 F.Supp. at 291 (quoting Fed.R.Civ.P. 8(a)(2)). "[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable [that party] to answer and prepare for trial." *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.*, 10 F.Supp.2d 334, 344 (S.D.N.Y.1998) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988)). Although the pleading requirements are construed liberally, "[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader. If it fails to do so, a motion

---

**10.** The sole case that plaintiffs cite in favor of their position was decided by the District Court of Colorado and involved retaliatory activity by an employer in response to an employee's filing of formal charges against the employer. *See Pedreyra v. Cornell Prescription Pharmacies, Inc.*, 465 F.Supp. 936, 947–48 (D.Colo.1979). This case is inapposite here.

under Rule 12(b)(6) will be granted." *Id.* (quoting 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.)).

In this case, the Complaint fails to provide Wilco notice of the contractual provision allegedly breached, or the nature of the breach; it merely states that "[d]efendant breached the terms of these employment contracts." [11] (Compl.¶ 112). Plaintiffs' submissions on the instant motion provide no further guidance. In their memorandum of law, plaintiffs state that the Complaint "sets out numerous grounds for breach," but the allegations to which they refer neither reference contractual provisions nor allege a violation of such provisions. (Pls.' Mem. at 21 (citing Compl. ¶¶ 36–38, 40, 41, 44).) Plaintiffs also suggest that Wilco's alleged violation of wage provisions within Section 1182(n) provides the basis for a breach of contract claim. (*Id.*) However, Section 1182(n) is not incorporated into plaintiffs' employment contracts; therefore, the failure by Wilco to comply with the section would not constitute a breach.

■ Accordingly, the Court finds that plaintiffs have not stated a claim for breach of contract, and dismisses their seventh cause of action without prejudice and with leave to replead. Because it derives from defendant's contractual obligations and purported breach thereof, plaintiffs' claim for violation of the duty of good faith and fair dealing is also dismissed without prejudice.

## C. Claims Against the Government Defendants

In their eighth cause of action, plaintiffs state that the government defendants "had a duty to police the activities of entities seeking the admission of foreign workers," and breached that duty by failing to reject labor condition applications that contained false information, as required under Section 1182(n)(1)(G). This "refusal of the federal defendants to take actions mandated under [Section 1182(n) ] has facilitated Wilco's unlawful and injurious conduct." (Certification of John F. McHugh ("McHugh Cert.") ¶ 2.) Accordingly, plaintiffs request that the Court issue a writ of mandamus directing the Attorney General and Secretary of Labor to take certain actions with respect to the labor condition applications filed by Wilco and "others." (Compl.¶ 120.) Plaintiffs also request that the Court enjoin the government defendants from "taking any action to deport or otherwise penalize any foreign worker fraudulently in the United States due to the false statements made by and violations of law committed by Wilco." (*Id.* ¶ 121.)

■ The government defendants move to dismiss this cause of action pursuant to Rules 12(b)(1) and 12(b)(6) because plaintiffs have not properly established the availability of a private right of action under the INA or mandamus jurisdiction under 28 U.S.C. § 1361 ("Section 1361"). Plaintiffs' contention that they have a private right of action that would justify an injunction against the government defendants, arising out of their purported violation of Section 1182(n), is unavailing for the same reasons as stated *supra* with regard to plaintiffs' claims against Wilco under the statute. *See* Part II.B, *supra.* Accordingly, because plaintiffs have no private right of action, that portion of plaintiffs' eighth claim requesting an injunction is dismissed pursuant to Rule 12(b)(6).[12]

---

**11.** Under a liberal reading of the Complaint, plaintiffs claims may center on the violation of certain unstated "grievance and disciplinary procedures." (Compl.¶ 110.) However, this allegation is insufficient to state a claim because (i) mention of such procedures is contained only in Shah's contract; (ii) the procedures are not described in the contract; the contract refers Shah to "orientation" documents for details; and (iii) there is no indication as to the nature of Wilco's alleged breach or how Wilco's breach would have resulted in damages to either of the plaintiffs.

**12.** Plaintiffs also lack standing to request an injunction, as they have not alleged that the United States is seeking the deportation of Barrett or any other foreign worker. *See*

A plaintiff only has a right to the common law writ of mandamus, as codified in Section 1361, if he demonstrates (i) a clear right to the relief sought, (ii) a plainly devised and peremptory duty on the part of the defendant to do the act in question, and (iii) no other adequate available remedy. *See Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir.1972); *see also Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (mandamus jurisdiction proper only where plaintiff "has exhausted all other avenues of relief and ... the defendant owes him a clear non-discretionary duty"). Because plaintiffs have not met the second and third requirements, their action against the government defendants must be dismissed.[13]

Plaintiffs request that the government defendants deny all labor condition applications "supported by false or fraudulent statements," and to reject all further applications filed by Wilco, because its previous applications, which contained considerably lower salaries for foreign workers, were "obviously inaccurate." (Compl. ¶ 120; Plaintiffs' Memorandum of Law in Opposition to the Motion by the United States ("Pls.' Mem. Gov.") at 2.) Plaintiffs have not established that either of the government defendants had or have a duty to deny the applications in question, because the statute specifies that the act of accepting or denying such applications is purely within the discretion of the administrative agency. 8 U.S.C. § 1182(n)(1)(G). There is no discretionary duty running from the government defendants to the plaintiffs to deny their applications in this case which would justify mandamus jurisdiction. *Cf. Heckler, supra,* 466 U.S. at 617, 104 S.Ct. 2013 (finding plaintiff not entitled to mandamus where Secretary of Health and Human Services made discretionary decision as to whether medical service is "reasonable and necessary" and the means by which that decision was implemented); *Mesallum v. INS,* No. 99 Civ. 3997, 1999 WL 1627348, at *1 (S.D.N.Y. Oct. 14, 1999) (finding no jurisdiction under mandamus statute where plaintiff failed to allege that the INS owed any non-discretionary duty to him). Plaintiffs' judgment that certain statements related to foreign workers' salaries contained in Wilco's application, were "obviously inaccurate," (Pls.' Mem. Gov. at 2–3), is inapposite. Nor should such judgment influence the Court. Plaintiffs appear to suggest that the Court is required to accept plaintiffs' assertion of "inaccuracy" on this motion to dismiss. (*Id.* at 2.) However, only factual assertions, not legal conclusions, are accepted as true on a motion to dismiss. *See Leatherman, supra,* 507 U.S. at 163, 113 S.Ct. 1160.

Moreover, there are other remedies available to plaintiffs, although not against the government defendants individually.[14] Plaintiffs may address Wilco's

---

*Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (holding that to have standing, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief," and the injury must be "distinct and palpable" and not merely "abstract or conjectural or hypothetical") (citations and internal quotations omitted); *cf. Barillas–Alverez v. Reno,* No. 98 Civ. 5445, 2000 WL 204523, at *5 (S.D.N.Y. Feb. 18, 2000) (finding that plaintiff lacked standing to challenge INS' interpretation of Section 1182 relating to restrictions upon aliens' voluntary departures where plaintiff did not have grant of voluntary departure). For the same reason, plaintiffs' challenge is not ripe for review. *See Reno v. Catholic Social Servs., Inc.,* 509 U.S. 43, 57, 113 S.Ct.

2485, 125 L.Ed.2d 38 (1993) (stating that courts are reluctant to issue injunctions in the context of administrative determinations "unless the effects of the administrative action challenged have been felt in a concrete way by the challenging parties") (citations and internal quotations omitted).

13. Because the government defendants claim that plaintiffs' mandamus claim should be dismissed for lack of subject matter jurisdiction, the Court addresses that claim under the standard applicable to Rule 12(b)(1).

14. Plaintiffs suggest that other available remedies must be against the government and provide for the requested relief. (Pls.' Mem. Gov. at 11–12.) Neither the statute nor applicable case law so provides; plaintiffs must

purported violations pursuant to the administrative procedures outlined *supra* which are available under Sections 1182(n) and 1324b. In addition to various civil penalties against Wilco, the statutes provide for back pay for nonimmigrant workers. 8 U.S.C. §§ 1182(n)(2)(C), (D), 1182(n)(5)(E); 20 C.F.R. §§ 655.805, 655.810(a), (b); *see also* 8 U.S.C. § 1182(n)(5)(E)(ii), 20 C.F.R. § 655.855 (specifying, *inter alia,* that where a violation is found the Attorney General shall not approve petitions filed under 8 U.S.C. §§ 1184(c), which governs the admission of nonimmigrants into the United States, for a period of at least one year). In addition, plaintiffs may file suit, and indeed have done so here, in a private action against their employer under the federal and state laws used to redress discrimination and contract violations. Because plaintiffs have failed to avail themselves of available remedies, (Declaration of R. Thomas Shierling dated July 31, 2000 2–3), mandamus jurisdiction is precluded. In addition, as the Court noted in the context of Wilco's motion to dismiss, plaintiffs' contention that, pursuant to 8 U.S.C. § 1182(n)(2)(H), Congress specifically provided that the remedies under the INA were not exclusive is unavailing. (Pls.' Mem. Gov. at 12.) The provision they cite treats only the scope of the Government's enforcement powers, not an aggrieved plaintiff's right or ability to sue under the Act. *See* Part II.B, *supra.*[15]

■ Further, plaintiffs assert that they have exhausted their administrative remedies by filing charges with the EEOC and obtaining right to sue letters. (Pls.' Mem. Gov. at 7 n. 4; McHugh Cert. ¶ 5.) While an EEOC charge is a prerequisite to suit in federal court under Title VII, *see Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the EEOC administrative process is unrelated to the established administrative enforcement procedure for alleged violations of the INA, and cannot act in its place here. Plaintiffs further assert that the Court should waive the exhaustion requirement as to Barrett, the foreign worker, because there is a possibility of irreparable harm and the administrative process would be futile. (Pls.' Mem. Gov. at 7–10.) Specifically, plaintiffs assert that the Secretary of Labor and Attorney General have failed to establish a process, called for under Section 1182(n)(2)(C)(iv), pursuant to which H–1B nonimmigrants who have been successful in challenging Wilco's practices can remain in the United States through the end of the period for which they were originally authorized to stay. (*Id.* at 3, 8–9.) This contention is unavailing.

Assuming that the government defendants have not established such a process, plaintiffs' contention is unavailing because Section 1182(n)(2)(C)(iv) applies only to workers who have filed retaliation claims. In this case, plaintiffs have only asserted retaliation as to Shah. Moreover, even if plaintiffs had asserted a retaliation claim as to Barrett, any allegation of irreparable harm to him or other foreign workers is speculative at best, because it assumes that (i) they will prevail in this action and/or a parallel administrative proceeding, (ii) they will be deemed "otherwise eligible" to remain in the United States, and (iii) they will be slated for deportation. Plaintiffs cannot establish any of these elements.[16] Finally, for the same reasons as

only have another "adequate available remedy." *Lovallo, supra,* 468 F.2d at 343.

**15.** The Courts of this Circuit have also found, in the social security context, that a finding that a plaintiff has not exhausted his administrative remedies is incompatible with mandamus jurisdiction, because the administrative remedies remain available to redress the plaintiff's injuries. *See, e.g., City of New York*

*v. Heckler,* 742 F.2d 729, 736–39 (2d Cir. 1984), *aff'd sub nom. Bowen, supra,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462; *see also Heckler v. Ringer,* 466 U.S. 602, 616–17, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Such rationale applies equally in this case.

**16.** When an alien has been issued a final deportation order, the federal courts have habeas corpus jurisdiction under 28 U.S.C.

outlined in the context of Wilco's motion, plaintiffs cannot establish that recourse to the administrative process would be futile in this case.[17] *See supra;* (Pls.' Mem. Gov. at 9–10.)

### D. Motion to Strike the Class Allegations

Plaintiffs filed this action "on their own behalf and, pursuant to Fed.R.Civ.P. 23 ["Rule 23"], as representatives of the two sub-classes" of the class which includes domestic and foreign employees who worked on Wilco's "Gloss" software program in the three years preceding the filing of the action. (Compl.¶ 6.) Plaintiffs estimate that the class contains more than 100 members. (*Id.* ¶ 9.) The common questions of law and fact that plaintiffs assert include Wilco's alleged violations of Section 1182(n) of the INA, (Compl.¶ 10(a)-(d)), and the government defendants' violation of duties "imposed upon them under the laws of the United States," (*Id.* ¶ 10(h)). Wilco moves, pursuant to Rule 12(f), to strike these class allegations as immaterial on the ground that they are irrelevant to any claim properly before the Court.[18] (Wilco's Mem. at 10.)

Under Rule 12(f), "[m]otions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Burger v. Health Ins. Plan of Greater New York,* 684 F.Supp. 46, 52–53 (S.D.N.Y. 1988) (citation omitted). Material will not be stricken on the ground it is immaterial and impertinent "unless it can be shown that no evidence in support of the allega-

tion would be admissible." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976); *Spirit Partners, L.P. v. Audiohighway.com,* No. 99 Civ. 9020, 2000 WL 1593385, at *11 (S.D.N.Y. Oct. 25, 2000).

Because the Court has dismissed plaintiffs' eighth cause of action, it grants plaintiffs' motion to strike the allegations pertaining to the government defendants contained in paragraph 10(h) of the Complaint; these issues are clearly immaterial to the prosecution of this case. The Court also strikes the allegation, contained in paragraph 10(d) of the Complaint, concerning Wilco's alleged failure to post information related to its H–1B applications; as noted *supra,* by the clear terms of the statute, the failure to post such information is not, in and of itself, a violation of Section 1182(n). However, while the Court has dismissed the claims against Wilco brought pursuant to Section 1182(n), it has required plaintiffs to provide a more definite statement as to its first and second causes of action. Wilco's other purported violations of Section 1182 are still potentially relevant to this case, although they no longer implicate direct claims against Wilco under the INA. Accordingly, the Court declines to strike the remainder of the class allegations pertaining to the INA.

### III. Conclusion

For the foregoing reasons, the Court (i) dismisses plaintiffs' first and second causes of action with prejudice to the extent that

---

§ 2241 to review challenges to exclusion. *See Calcano–Martinez v. INS,* 232 F.3d 328, 333–34 (2d Cir.2000).

**17.** As further justification for waiver of the exhaustion requirement, plaintiffs point to the Attorney General's refusal to revoke regulations that purportedly provide for the cancellation of a complaining H–1B visa holder's labor certification, which subjects such complainants to immediate deportation if they bring a successful claim under Section 1182(n). (Pls.' Mem. Gov. at 8.) However, plaintiffs have not established that the Attor-

ney General had a duty to revoke such regulations. Even if the Attorney General was required to revoke them, the specific regulation cited by plaintiffs, 20 C.F.R. § 656.31(b), merely directs the labor officer to halt the processing of the application when an applicant is involved in a criminal proceeding. Thus, plaintiffs have failed to establish the prospect of irreparable harm.

**18.** Plaintiffs have not responded to this part of Wilco's motion.

they assert claims pursuant to Section 1182(n); (ii) orders plaintiffs to provide defendant with a more definite statement of the remaining allegations contained in its first and second claims within three weeks from the date of this Opinion; (iii) dismisses plaintiffs' third, fifth, and eighth causes of action in their entirety with prejudice; (iv) dismisses plaintiffs' seventh cause of action without prejudice and with leave to replead; and (v) strikes plaintiffs' class allegations contained in subparagraphs 10(d) and 10(h) of the Complaint.

SO ORDERED.